UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA

| | |
|---|---|
| OPTIMUS INDUSTRIES LLC d/b/a CHANUTE MANUFACTURING COMPANY, a Delaware limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>FACTORY MUTUAL INSURANCE COMPANY, a Rhode Island Corporation; and NIPPON PAPER INDUSTRIES USA CO., LTD, a Washington corporation,<br><br>Defendants. | No. 3:15-cv-05149-RJB<br><br>ORDER ON DEFENDANT FACTORY MUTUAL INSURANCE COMPANY'S MOTION TO DISMISS PLAINTIFF FACTORY SALES AND ENGINEERING'S AMENDED COMPLAINT PURSUANT TO FED.R.CIV.P. 12(B)(1) AND 12(B)(6) |

THIS MATTER comes before the Court on a motion to dismiss by the defendant, Factory Mutual Insurance Company ("FM Insurance"). Dkt. 8, 9. The Court has reviewed Plaintiff's responsive briefing and the remainder of the file therein. Dkt. 11, 13.

I.    BACKGROUND

According to the Complaint, a biomass power facility owned and operated by defendant, Nippon Paper Industries ("Nippon"), contracted with Factory Sales and Engineering, d/b/a FSE Energy ("FSE"), for the design, supply, and install of a biomass

ORDER - 1

boiler. Dkt. 1, at 1, 2. The plaintiff, Optimus Industries LLC, d/b/a Chanute Manufacturing Company ("Chanute"), undertook the fabrication of a "steam drum" and a "mud drum" as a subcontractor to FSE. *Id*. Chanute alleges that, per the terms of a contract between FSE and Nippon ("the Contract")(Dkt. 9-1), Nippon was obligated to purchase and maintain property insurance and to pay related costs not covered by the insurance deductible. *Id*., at 3. *See* Dkt. 9-1, at 14-17. According to the Complaint, the Contract also contains a "Waivers of Subrogation" provision that would preclude lawsuits between FSE and Nippon and any subcontractors. *Id*. Dkt. 9-1, at 17.

The Complaint also alleges that, as required by the Contract, Nippon purchased a builders' risk insurance policy ("the Policy")(Dkt. 9-2). Dkt. 1, at 3, 4. *See* Dkt. 9-1, at 15, 16. FM Insurance issued the one-year policy to cover the "insured location . . . to the extent of the interest of the Insured in such property." Dkt. 9-2 at 16. The Policy also "insures the interest of contractors and subcontractors in insured property during construction at an insured location . . . to the extent of the Insured's legal liability for insured physical loss or damage to such property." *Id*. Dkt. 1, at 3.

Against FM Insurance, Chanute seeks declaratory judgment as to four discrete issues. For the sake of judicial economy, the Court does not quote the Contract (Dkt. 9-1) or the Policy (Dkt. 9-2) at length, but will rely on both documents in its analysis.

## II. DISCUSSION

The focus of FM Insurance's argument is Chanute's standing, which FM Insurance raises under Fed.R.Civ.P. 12(b)(1) and Fed. R. Civ. Pr. 12(b)(6). *See* Dkt. 8. Accordingly, the Court directs its attention to this threshold issue, which FM Insurance properly raised as a Fed.R.Civ.P. 12(b) motion. *Maya v. Centex Corp.*, 658 F.3d 1060, 1068 (9th Cir. 2011). *See,*

*e.g., Vaughn v. Bay Envtl. Mgmt., Inc.*, 567 F.3d 1021, 1024 (9th Cir. 2009) (statutory standing raised as Fed.R.Civ.P. 12(b)(6) motion to dismiss); *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1141 (9th Cir. 2003) (constitutional standing raised as Fed.R.Civ.P. 12(b)(1) motion to dismiss).

FM Insurance argues that Chanute lacks standing because Chanute is neither an Insured, Named Insured, nor a third-party beneficiary of the Policy. Dkt. 8, at 7, 11-21. Furthermore, FM Insurance contends, Chanute is not named as an Additional Insured, but even if so, Chanute has not pleaded the existence of a Certificate of Insurance or the equivalent, as required by the Policy. *Id*., at 9. *See* Dkt. 9-2, at 7. Finally, Chanute is not a co-insured, according to FM Insurance, because there is no evidence of mutual intent by Nippon and FM Insurance that FM Insurance would assume a direct obligation to Chanute. *Id*., at 15-18. FM Insurance's reply briefing mostly reiterates its prior arguments that Chanute is not an Insured, co-insured, or third-party beneficiary, but also responds to Chanute's arguments about relying on the Federal Declaratory Judgment Act ("the FDJA") as a basis for standing. *See generally*, Dkt. 13.

Chanute argues firstly that FM Insurance has conflated "standing" with "being an 'insured.'" Dkt. 11, at 1, 8. Chanute has standing under the FDJA, Chanute contends, because there is an actual controversy that is immediate and real: FM Insurance refuses to pay for damage to Nippon's biomass boiler, but if FM Insurance pays on the policy, it is barred from subrogating against Chanute, which makes the interests of FM Insurance and Chanute adverse. *Id*., at 8-11. In addition, Chanute argues, Chanute has standing because it has an insurable interest both under the plain terms of the Policy and under Washington law *Id*., at 11-13. *See* RCW 48.18.040 and 48.18.050. Chanute also argues that Chanute is a co-insured

because Nippon and FM Insurance waived their subrogation rights by the Contract, and that Chanute is a third-party beneficiary under the plain terms of the Policy. *Id.*, at 14-19. Chanute does not argue that it is an Additional Insured as defined in the Policy. *See generally, id.*

While there is no question that a party seeking to enforce a contract must have standing, in this case whether Chanute has standing turns on the Court's interpretation of the Policy. Under Washington State law, "the interpretation of language in an insurance policy is a matter of law." *Moeller v. Farmers Ins. Co. of Wash.,* 173 Wn.2d 264, 267 (2011). "If the language in an insurance contract is clear and unambiguous, the court must enforce it as written and may not modify the contract or create ambiguity where none exists." *Transcon. Ins. Co. v. Wash. Pub. Utils. Dists.' Util. Sys.,* 111 Wn.2d 452, 455 (1988). Nevertheless, "the contract as whole must be read as the average person would read it; it should be given a practical and reasonable rather than a literal interpretation, and not a strained or forced construction leading to absurd results." *Moeller,* 267 P.3d at 1002 (citations and quotations omitted). Any undefined terms should be "given their ordinary and common meaning, not their legal, technical meaning." *Moeller,* 267 P.3d at 1002. "Exclusionary clauses are to be most strictly construed against the insurer." *Vadheim v. Cont'l Ins. Co.,* 107 Wash.2d 836, 839 (1987).

After careful consideration of the Policy in its entirety, the Court concludes that the most reasonable and practical interpretation of the Policy creates an insurable interest for subcontractors, including Chanute. The Policy is unambiguous when it states that "[t]his Policy also insures the ***interest of*** contractors and ***subcontractors in insured property during construction*** at an insured location[.]" Dkt. 9-2, at 16 (emphasis added). On its own terms

ORDER - 4

then, the Policy plainly creates an insurable interest for subcontractors, and Chanute is undisputedly a subcontractor.

This interpretation is further supported by the broader context of the section entitled "Property Damage," in which the above provision is found. *Id*., at 16. After creating an insurable interest for contractors, *see supra*, the Policy goes on to specify the limits of the liability for contractors and subcontractors, confining them "to the extent of the Insured's legal liability for insured physical loss or damage to such property. Such interest . . . is limited to the property for which they have been hired to perform work[.]" *Id*. Reading "Insured" as referring to Nippon (*see* Dkt. 9-2, at 7, "Nippon . . . hereafter referred to as the 'Insured'"), the Property Damage provision thus covers damage to the insured property caused by both Chanute and Nippon.

In sum, the Policy creates an insurable interest for contractors, including Chanute. The Court will now direct its attention to analyzing the type of insured interest in the Policy Chanute possesses: whether Chanute is a Named Insured, Insured, Additional Insured, co-insured, or third-party beneficiary. The type of interest may be dispositive as to whether a party has standing under a policy for specific claims. *See, e.g.,Tank v. State Farm & Cas. Co.,* 105 Wn. 2d 381, 393 (1986) (no standing for third-party claimant against insurer for breach of fiduciary duties because no fiduciary duty owed to third-party).

a. <u>Insured and Named Insured</u> (Dkt. 8, at 7-9)

FM Insurance argues that Chanute is neither a Named Insured nor an Insured under the Policy, because the Policy designates Nippon only as a Named Insured, and immediately thereafter specifies that Nippon is "hereafter referred to as the 'Insured.'" Dkt. 8, at 7-9. *See*

ORDER - 5

Dkt. 9-2, at 4, 7. Chanute does not argue that Chanute is a Named Insured, but points to the terms of the Policy as indicative of Chanute's status as an Insured. Dkt. 11, at 11-13.

Although used throughout the Policy, the terms "Named Insured" and "Insured" are not defined in the definitions section of the Policy. *See* Dkt. 9-2, at 69-75. However, the relevant portion names only Nippon (and its subsidiaries) in a provision entitled, "NAMED INSURED AND MAILING ADDRESS." By any reasonable interpretation of the Policy, Nippon is the only Named Insured.

After the Policy lists Nippon as the Named Insured, the same provision of the Policy states that Nippon is "hereafter referred to as the 'Insured.'" Dkt. 9-2, at 7. Thereafter, the term "Insured" is used multiple times, but the term "Named Insured" is not used anywhere else in the Policy. *See generally*, Dkt. 9-2. Given this context, the best-supported interpretation of "Insured" refers only to Nippon. Chanute's argument that Chanute is an Insured because it has an insurable interest flows against the syntax of the relevant portion of the Policy, which differentiates between Insured and the interest of contractors with separate sentences and paragraphs. *See* Dkt. 9-2, at 16. Therefore, according to the Policy, Chanute lacks standing to enforce the Policy either as a Named Insured or an Insured.

    b.  <u>Additional Insured</u> (Dkt. 8, at 9, 10)

FM Insurance contends that FSE is not an "Additional Insured," as defined by the Policy. The Policy states how interests of an Additional Insured is created: "when named as an additional named insured . . . either on a Certificate of Insurance or other evidence on file[.]" Dkt. 9-2, at 7 (emphasis added). Chanute does not argue that Chanute is actually named as an Additional Insured either somewhere in the Policy or on a Certificate of Insurance or other documentation. *See generally,* Dkt. 1, 11. Because Chanute is not named as

ORDER - 6

an Additional Insured in any relevant documentation, it is not an Additional Insured under the terms of the Policy. *See Polstelwait*, 106 Wn.2d at 100, 101. *C.f., e.g., NCF Fin., Inc. v. St. Paul Fire & Marine Ins. Co.*, 137 Wn. App. 1016 (2007)(unpublished)(standing to sue as additional insured when named in insurance policy). Accordingly, Chanute does not have standing to enforce the Policy as an Additional Insured.

    c.  <u>Co-insured (Dkt. 8, at 15-17; Dkt. 11, at 13-19; Dkt. 13)</u>

Chanute argues that Chanute is a co-insured because of the Policy and the Contract between Nippon and FM Insurance, which waived claims and subrogation rights against Chanute. Dkt. 11, at 13-19. *See* Dkt. 9-2, at 63; Dkt. 9-1, at 17. In relevant part, the subrogation clause reads that "[FM Insurance] will not acquire any rights of recovery that the Insured has expressly waived prior to a loss[.]" Dkt. 9-2, at 63. FM Insurance rejects Chaunte's argument by distinguishing Chanute's authority and arguing that a co-insured for purposes of subrogation is not synonymous with "insured" status for all purposes. Dkt. 13, at 9, 10.

Chanute's reliance on the subrogation clause of the Policy is misguided, because nothing in the clause, on its plain terms, makes Chanute a co-insured. *See* Dkt. 9-2, at 63. The only issue is whether the Policy, read as a whole, shows the parties' mutual intent to make Chanute a co-insured. The Court must find in the negative. Even where a party is not a named insured, that party may still be a co-insured if the policy was written for the actual benefit of that party. *Gen. Ins. Co. of Am. v. Stoddard Wendle Ford Motors*, 67 Wn. 2d 973, 979 (Div. 1, 1966). In *Stoddard*, a case stemming from a lawsuit between a buyer and a seller, the court held that the buyer's insurer's subrogation claim against the seller was barred because the insurance policy buyer's insurance policy was for the "actual benefit" of the seller (as well as

the buyer). *Stoddard*, 67 Wn.2d at 978–79. In a similar case citing the rule from *Stoddard*, *Johnny's Seafood Co. v. City of Tacoma*, 73 Wn. App. 415, 422-23 (Div. 2, 1994), the court pointed to two significant factual differences of *Stoddard* that, in that case, weighed in favor of a finding that the seller was a co-insured along with the buyer: (1) although not named as a loss payee on the insurance policy itself, the seller was specifically listed as a named insured on the insurance policy's cancellation notice; and (2) the seller's agent was specifically listed as a named insured in the policy itself. *Id.*, at 423.

*Stoddard* is similarly distinguished in this case. Although Chanute may benefit from the Policy (see third-party beneficiary analysis *infra*), there is no indication that the Policy was written for the actual benefit of Chanute as contemplated in *Stoddard*, because neither Chanute nor any agent of Chanute is named anywhere in the Policy or related correspondences from FM Insurance. *See* Dkt. 9-1, 9-2. Chanute lacks standing under the Policy as a co-insured.

    d.   <u>Third-party beneficiary (Dkt. 8, at 11-15; Dkt. 11; Dkt. 13, at 9-11)</u>

In *Postlewait Const., Inc. v. Great Am. Ins. Co.*, 106 Wn. 2d 96, 99-100 (1986), the court analyzed whether an unnamed third-party beneficiary to an insurance policy could directly sue an insurance company for alleged breaches of the insurance policy. In its determination, the court analyzed the intent to benefit a third party: "The test of intent is an objective one; the key is not whether the contracting parties had an altruistic motive or desire . . . but rather, 'whether performance under the contract would necessarily and directly benefit' that party." *Id.*, at 99 (emphasis added)(quoting from *Lonsdale v. Chesterfield*, 99 Wn.3d 353, 385 (1983). To determine the contracting parties' intent, courts are to first consider the plain meaning of terms as used or defined within the four corners of the contract, but they may

consider extrinsic evidence where helpful in ascertaining the parties' intent. *Berg v. Hudesman*, 115 Wash. 2d 657, 667 (1990). Extrinsic evidence "cannot change the plain meaning of a writing, but meaning can almost never be plain except in context." *Id.*, at 668.

As an insurer, FM Insurance is a sophisticated party, free to insure who it may with carefully negotiated terms. *Touchette v. Northwestern Mut. Ins. Co.*, 80 Wn.2d 327, 335 (1972). As discussed above, the Policy plainly extends coverage to subcontractors generally, which includes Chanute. *See* Dkt. 9-2, at 16 ("This policy also insures the interest of contractors and subcontractors . . . in insured property during construction at an insured location[.]"). Therefore, Chanute has an insurable interest. *See infra*. However, neither Chanute nor its agent is listed anywhere in the Policy, so any benefit to Chanute is derivative of the Policy's coverage of the insured property. This is particularly the case where the Policy deliberately names only Nippon as the Policy's Named Insured and specifies that the Named Insured will thereafter be referred to as Insured. Dkt. 9-2, at 7. *See supra*. The Policy makes Chanute a third-party beneficiary, not a co-insured. *See Stoddard*, 67 Wn.2d at 978–79.

Even if the Policy were not clear in its intent to make Chanute a third-party beneficiary, extrinsic evidence, the Contract language reinforces this intent. Dkt. 9-1, at 15, 16. *See Berg*, 115 Wn. 2d at 667. The Contract, an integrated agreement between Nippon and FSE, states that "[Nippon] has purchased and will maintain at its expense throughout the duration of the work, Builder's Risk property insurance on an "all-risk" or equivalent policy[.]" Dkt. 9-1, at 15. The terms of the Contract, as well as the Policy, indicate an intent to benefit Chanute as a third-party beneficiary.

\* \* \*

As a third-party beneficiary to the Policy, Chanute's standing to enforce specific claims depends on the claim. For example, had Chanute asserted an intentional tort against FM Insurance, Chanute would have standing as a third-party. *Dussault ex rel. Walker-Van Buren v. Am. Int'l Grp., Inc.*, 123 Wn. App. 863, 869-71 (2004). Chanute seeks declaratory relief, although it is not clear to the Court whether Chanute seeks declaratory relief under state or federal law ("28 U.S.C. 2201 and other applicable law"), but that is of no consequence, because Chanute has standing under both. Under Washington law, Chanute, as a third party to an insurance policy, has standing to bring claims under Washington's Uniform Declaratory Judgments Act. RCW 7.24. *See, e.g., Glandon v. Searle*, 68 Wn. 2d 199, 202 (1966).

Chanute also has standing under the federal statutory equivalent, the FDJA, because Chanute meets the Article III "cases" or "controversies" requirement. *See* 28 U.S.C. § 2201. Standing is a core component of the cases or controversies requirement, satisfied when a plaintiff shows an injury in fact caused by "the conduct complained of" that will be "redressed by a favorable decision." *Camreta v. Greene,* 131 S.Ct. 2020, 2028 (2011)(*quoting Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-561 (1992); *Barnum Timber Co. v. U.S. E.P.A.,* 633 F.3d 894, 897 (9th Cir. 2011). Taking the facts alleged in the Complaint as true, Chanute has standing for its declaratory relief request under federal law: Chanute has an insurable interest, *see supra*, and Chanute has made the proper showing of a redressable injury, for example, in seeking the Court's judgment as to whether FM Insurance may bring a subrogation action against Chanute. In summary, FM Insurance's motion to dismiss should be denied because Chanute has standing.

ORDER - 10

III.   CONCLUSION

Accordingly, it is hereby **ORDERED** that Defendant's Motion to Dismiss (Dkt. 8) is **DENIED**. Plaintiff's request for declaratory relief may proceed.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

Dated this 18th day of June, 2015.

                                                            *Robert J. Bryan*
                                                            ROBERT J. BRYAN
                                                            United States District Judge

ORDER - 11